UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TRACY MARTINEZ,<br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security<br>Administration,<br>　　　　Defendant. | )<br>)<br>)<br>)　CAUSE NO.: 2:19-CV-152-TLS-JPK<br>)<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on April 26, 2019, and Plaintiff's Opening Brief [DE 16], filed on November 13, 2019, in support of her request for review and remand of the Commissioner of Social Security's decision denying Plaintiff's claim for disability insurance benefits. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 17]. Plaintiff filed no reply brief, and the time to do so has passed.

On September 6, 2019, District Court Judge Theresa L. Springmann entered an Order [DE 11] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court Judge affirm the agency's decision and enter Judgement in favor of the Defendant Commissioner.

**PROCEDURAL BACKGROUND**

On December 2, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning June 1, 2010, due to multiple impairments: diabetes; blood clots;

COPD (chronic obstructive pulmonary disease); chest pain; high blood pressure; back, leg, and shoulder pain; arthritis of the hand; and anxiety. (AR 21, 97-98, 186).[1] The application was denied initially and on reconsideration. (AR 97-121). Plaintiff then requested a hearing (AR 133-34), which was held before an Administrative Law Judge (ALJ) on March 13, 2018. (AR 37). On June 26, 2018, the ALJ issued an unfavorable decision (AR 21-31), making the following findings:[2]

    1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.

    2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2010 through her date last insured of December 31, 2015.

    3.    Through the date last insured, the claimant had the following severe impairments: degenerative disk disease, diabetes, history of pulmonary embolism, chronic obstructive pulmonary disease, and coronary artery disease.

    4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CPR Part 404, Subpart P, Appendix 1.

    5.    [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-hour workday. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can frequently balance, and can occasionally stoop, crouch, kneel, and crawl. The claimant must avoid all exposure to temperature extremes, high humidity, fumes, odors, dusts, gases, and poor ventilation. The claimant must avoid all exposure to hazards, including dangerous moving machinery, unprotected heights, slippery surfaces, and dangerous or uneven terrain.

    6.    Through the date last insured, the claimant was unable to perform any past relevant work.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

      7.     The claimant was born [in] 1965 and was 50 years old . . . on the date last insured. The claimant subsequently changed age category to closely approaching advanced age.

      8.     The claimant has a limited education and is able to communicate in English.

      9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

      10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

      11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2010, the alleged onset date, through December 31, 2015, the date last insured.

The Appeals Council denied Plaintiff's request for review on February 27, 2019 (AR 1-7), rendering the ALJ's June 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether

she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts only one ground for reversal of the ALJ's June 2018 decision: she contends the ALJ erred at step two of the sequential analysis by failing to find Plaintiff's "hand arthritis" to be a medically determinable impairment. (Pl.'s Br. 1, ECF No. 16). As explained below, this argument fails for two overarching reasons. First, the ALJ's finding that Plaintiff had no medically determinable impairment relating to her hands (AR 24) is supported by substantial evidence. And second, any error in that determination would be harmless, given the ALJ's well supported findings regarding Plaintiff's RFC and the jobs she was able to perform during the period under review (AR 25-30), none of which are challenged in this appeal.

### I.     The ALJ's Step-Two Determination

As noted above, Plaintiff bears the burden at step two of the sequential analysis to demonstrate one or more medically determinable impairments that are severe. Thus, as both sides acknowledge, it is Plaintiff's burden to show that her alleged "hand arthritis" was medically

determinable. (Pl.'s Br. 6, ECF No. 16; D's Mem. 3-4, ECF No. 17). *See also Kinsey v. Berryhill*, No. 2:16-cv-69, 2017 WL 1101140, at *7 (N.D. Ind. Mar. 24, 2017) ("Plaintiff has the burden of proving that she has the medically determinable impairment of multiple sclerosis."). Both sides also recognize that a medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by objective medical evidence from an acceptable medical source." (Pl.'s Br. 6, ECF No. 16 (quoting 20 C.F.R. § 404.1521); D's Mem. 3-4, ECF No. 17 (same)). "We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." (Pl.'s Br. 6 (quoting § 404.1521)).

Consistent with these directives, the ALJ properly considered that Plaintiff "alleged symptoms in her hands that included swelling and throbbing" (AR 24), but found no medically determinable impairment relating to her hands for three reasons: (1) a March 2016 consultative examination found normal grip strength and good fine finger manipulative abilities, (2) an August 2016 x-ray revealed no arthritis, and (3) Plaintiff testified at the March 2018 hearing that no impairment relating to her hands had been diagnosed. (AR 24 (citing AR 63, 658, 751). Plaintiff herself acknowledges these bases for the ALJ's finding and disputes none of them. (*See* Pl.'s Br. 6-7, ECF No. 16). Instead, Plaintiff cites other evidence which she contends "supports both a diagnosis of hand arthritis and objective clinical signs and diagnostic techniques [that] support hand arthritis as a medically determinable impairment." (*Id*.). But the four medical records Plaintiff cites (each of which predates the evidence cited by the ALJ) are insufficient on their own, and in any event fail to outweigh the later records relied upon by the ALJ.

For instance, Plaintiff claims that an August 12, 2015 medical record from her primary care physician, Dr. Melvin Richardson, "contains a diagnosis of arthritis of hand." (Pl.'s Br. 7 (citing

6

AR 318)). But in fact, the record Plaintiff cites shows merely a battery of tests ordered after Plaintiff's initial examination on August 10, 2015, which lists "arthritis of hand" among ten "associated diagnoses" for which testing was ordered, not a confirmation of each such potential condition. (AR 318-57). To the contrary, Dr. Richardson's "assessment and plan" after that examination listed a smaller subset of diagnoses that excluded "arthritis of hand," and noted the need to review the testing ("Check lab") that had been ordered. (AR 299). As § 404.1521 makes clear, such an ambiguous reference to a potential "diagnosis" pending further tests falls short of demonstrating a medically determinable impairment. *See* 20 C.F.R. § 404.1521 ("diagnosis" insufficient to establish impairment); *see also Cooley v. Berryhill*, 738 Fed. App'x 877, 880-81 (7th Cir. 2018) ("An ALJ may discount a doctor's statements that are not adequately explained if the treatment notes do not clarify the doctor's reasoning."); *Kinsey*, 2017 WL 1101140, at *7 ("none of these records contain the actual diagnosis and its basis; rather all of the records simply list or mention a historical diagnosis of multiple sclerosis," including a report that "lists fifteen different 'diagnoses,' including multiple sclerosis, which appear to be reported by Plaintiff").

The remaining three records that Plaintiff cites indicate swelling and/or tenderness in her hands on September 29 and November 19, 2015, and February 4, 2016. (AR 292, 296, 641). The November 2015 examination also indicated reduced range of motion in Plaintiff's hands and an assessment of "polyarthritis" (AR 292-93), neither of which was indicated during the February 2016 examination. (AR 641-42). But while these records indicate certain sporadic symptoms relating to Plaintiff's hands, the ALJ reasonably concluded that they similarly fail to demonstrate a medically determinable impairment of arthritis in her hands, particularly in light of later records contradicting those symptoms and ruling out any such impairment. (AR 24, 27-28). Contrary to Plaintiff's claim that the ALJ "failed to consider any of this evidence in support of a medically

determinable impairment of her hands" (Pl.'s Br. 7, ECF No. 16), the ALJ expressly considered Dr. Richardson's November 2015 examination findings, but fairly found that Plaintiff's March 2016 consultative examination "undercuts" them. (AR 27-28 (citing AR 291-93)). As the ALJ recounted, the consultative examination report showed normal range of motion in all upper extremities; no erythema, warmth, or swelling bilaterally in the hands; normal grip strength at 5/5 bilaterally; and good fine finger manipulative abilities. (AR 24, 27-28 (citing AR 658)).

In addition to the March 2016 consultative examination, the ALJ also considered an August 2016 x-ray ordered by Dr. Richardson (after *all* of the examinations on which Plaintiff relies) to confirm or rule out any arthritis in Plaintiff's hands. (AR 24 (citing AR 751)). The record shows that Dr. Richardson requested this x-ray after his opinions were solicited in March and April 2016 regarding Plaintiff's disability claim and the impact of her impairments on work-related activities, including handling objects. (AR 644, 669). X-rays of Plaintiff's hands were then taken on August 1, 2016, for the express purpose of evaluating her claims of bilateral hand pain and any "arthritis of hand." (AR 746). But the results showed "no evidence of inflammatory or degenerative arthritis," "no abnormal soft tissue calcification," "no evidence of acute fracture or subluxation," and "no marginal erosions or periostitis." (AR 746). Additionally, bone mineralization was "normal," and joint spaces were "well-preserved." (AR 746). Dr. Richardson acknowledged these results on August 5, 2016 (AR 751), and Plaintiff points to no diagnosis of arthritis or any other impairment affecting her hands thereafter. To the contrary, as noted above, Plaintiff testified at the administrative hearing that no impairment relating to her hands had been diagnosed. (AR 63).

Thus, while Plaintiff points to certain earlier records noting tenderness and/or swelling in her hands and a potential diagnosis of arthritis, those records are insufficient on their own to demonstrate a medically determinable impairment in the absence of the clinical and laboratory

diagnostic techniques required under § 404.1521. *See Kinsey*, 2017 WL 1101140, at *7 ("historical diagnosis" of MS insufficient absent "definitive diagnostic testing that would support said diagnosis"). That principle applies with particular force in this case, where the clinical and laboratory diagnostic tests later conducted ultimately contradicted the symptoms and diagnosis that Plaintiff now asserts. (AR 658, 746, 751). On this record, and considering the objective medical evidence required to demonstrate a medically determinable impairment under § 404.1521, the ALJ's finding that Plaintiff had no medically determinable impairment relating to her hands is supported by more than substantial evidence. Indeed, even before her August 2016 x-rays and March 2016 consultative examination, Plaintiff's Functional Report dated December 31, 2015 (her last date insured) admitted that her impairments cause no limitations in using her hands. (AR 229). This Court finds no basis to infer a medically determinable impairment concerning Plaintiff's hands in the face of that admission and the ample contrary evidence cited by the ALJ.

**II.     Harmlessness**

Because substantial evidence supports the ALJ's step-two determination that Plaintiff had no medically determinable impairment relating to her hands, no further evaluation of such an impairment was required in the remaining steps of the sequential analysis. *See Kinsey*, 2017 WL 1101140, at *8. But even assuming some error at step two (which this Court does not), it would be harmless, because the ALJ nevertheless addressed Plaintiff's alleged hand impairment when determining her RFC and the jobs she can perform (AR 27-28), and the record fully supports those determinations (which even Plaintiff does not challenge). "So, 'even if there were a mistake at Step 2, it does not matter." *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015) (quoting *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)).

As the Seventh Circuit has explained repeatedly, the determination of whether a claimant has a severe medically determinable impairment is  merely a  "threshold"  inquiry required before

proceeding to the next step in the sequential analysis, since "an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even one severe impairment." *Curvin*, 778 F.3d at 649 (quoting *Arnett*, 676 F.3d at 591). Thus, where an ALJ finds one or more severe medically determinable impairments at step two (as the ALJ did here), "error at that step is harmless," so long as the ALJ later addresses all limitations caused by the claimant's severe and non-severe impairments when determining her RFC. *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); *Curvin*, 778 F.3d at 649 ("even if there were such an error at step 2, it would have been harmless because the ALJ properly considered all of Curvin's severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3"). As the Commissioner correctly notes, Plaintiff identifies no additional limitations that should have been included in her RFC, and alleges no other error in the ALJ's RFC determination. (D's Mem. 6, ECF No. 17). Absent any such challenge, any error by the ALJ at step two must be considered harmless. *See Kinsey*, 2017 WL 1101140, at *8 ("Even if the ALJ erred in finding Plaintiff's alleged multiple sclerosis to be a non-medically determinable impairment, the error would be harmless because Plaintiff has not identified any additional effects of the purported impairment alone or in combination with other impairments that the ALJ did not consider in formulating the RFC.").

Plaintiff's failure to argue for any RFC limitations relating to her hands is hardly surprising, given her admission on her last date insured that her impairments caused no limitations in using her hands. (AR 229). But the record also shows that the ALJ's RFC determination is well supported for other reasons as well. Although the ALJ found Plaintiff's claimed hand arthritis a nonmedically determinable impairment at step two (AR 24), he was nevertheless careful to consider Plaintiff's handling abilities and Dr. Richardson's November 2015 report of certain hand-related symptoms

when determining her RFC. (AR 27-28 (citing AR 291-93)). As the ALJ observed, however, Plaintiff's consultative examination indicated normal grip strength at 5/5 bilaterally and good fine finger manipulative abilities, "which undercuts Dr. Richardson's November 2015 findings of additional clinical signs." (AR 27-28 (citing 658)). The ALJ also relied on both reviewing agency physicians when considering Plaintiff's RFC. (AR 29). And like the ALJ, both reviewers considered Dr. Richardson's November 2015 report of swelling, tenderness, and reduced range of motion in Plaintiff's hands, but found it warranted no additional RFC limitations beyond the restriction to light work which the ALJ adopted. (AR 25, 29, 103-05, 116-18). Thus, wholly apart from Plaintiff's failure to challenge the ALJ's RFC determination regarding her hand use, that determination should not be disturbed because it too enjoys more than substantial support. Any failure by the ALJ to find Plaintiff's alleged hand impairment medically determinable at step two is therefore harmless, if only because no RFC limitations were required to address it in any event.

But the ALJ went further still. In addition to considering Plaintiff's alleged hand impairment when considering her RFC, the ALJ questioned the Vocational Expert (VE) regarding whether an additional RFC limitation to frequent handling and fingering bilaterally would affect the jobs he identified. (AR 76-77). According to the VE, such a limitation would have no impact on any of the jobs (checker, routing clerk, and mail sorter – the same jobs the ALJ later found Plaintiff could perform); only a more restrictive limitation to occasional handling and fingering would affect job availability. (AR 30, 76-77, 79). But again, Plaintiff makes no argument for any handling or fingering limitations in her RFC, much less the more restrictive limitation to occasional handling and fingering. Nor does the record support such a restrictive limitation, particularly given Plaintiff's admission that her impairments do not affect the use of her hands. (AR 229). Accordingly, since the lesser restriction to frequent handling and fingering would have no impact

on job availability, any error in the ALJ's assessment of Plaintiff's claimed hand impairment or omission of that limitation to address it would, once again, be harmless. *See Wilhelm v. Colvin*, No. 1:13-cv-323, 2015 WL 926010, at *6 (N.D. Ind. Mar. 4, 2015) (failure to find sinusitis a medically determinable impairment harmless where "claimant would still be able to perform the identified jobs, even with added restrictions" to address that impairment).

Thus, in sum, this Court finds the ALJ's step-two determination that Plaintiff had no medically determinable impairment relating to her hands supported by substantial evidence, and therefore finds no error in that determination. But also, any such error would be harmless because Plaintiff challenges none of the ALJ's ensuing determinations regarding her RFC or the jobs she can perform, and because those determinations are also supported by substantial evidence. And as Plaintiff acknowledges, harmless error provides no basis for remand. (Pl.'s Br. 6, ECF No. 16).

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court affirm the decision of the Commissioner of the Social Security Administration and enter judgment in favor of the Commissioner and against Plaintiff Tracy Martinez.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 21st day of July, 2020.

                                                s/ Joshua P. Kolar
                                                MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                UNITED STATES DISTRICT COURT